IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>On behalf and for the benefit of, | ) <br> ) <br> ) | |
| LGS GROUP, LLC<br>t/a LGS GROUP – BALTIMORE FRAMING and<br>LGS GROUP – S. CHARLOTTE FRAMING, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | Case No: |
| SAFECO INSURANCE COMPANY, | ) <br> ) | |
| and | ) <br> ) | |
| ODYSSEY INTERNATIONAL INC., | ) <br> ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, The United States of America, on behalf and for the benefit of LGS Group LLC t/a LGS Group – Baltimore Framing and LGS Group – S. Charlotte Framing, (hereinafter, "Baltimore Framing"), by and through its undersigned counsel, hereby sues defendants, Safeco Insurance Company ("Safeco" or "Surety") and Odyssey International, Inc. ("Odyssey" or "General Contractor")(collectively, "Defendants"), under The Miller Act, 40 U.S.C. § 3133 and states as follows:

### I.    INTRODUCTION

1.    This case arises out of a newly constructed federal project more commonly known as C-17 Flight Simulator, Dover Air Force Base, and having a contract number W912BU-06-C-008 (the "Project").  Odyssey acted as the general contractor on the Project, and subcontracted to

LGS Consulting, LLC,[1] to supply certain light gauge framing and sheetrock materials and services to the Project.

2.　　In turn, LGS Consulting subcontracted Baltimore Framing to supply the light gauge framing and sheetrock materials and services to the Project. Despite supplying the aforementioned materials and services to the Project and making demand, Baltimore Framing has not been paid the full amount owed under the subcontract. The unpaid amounts have remained unpaid at the expiration of ninety (90) days from the last date on which Baltimore Framing supplied materials and services to the Project. Accordingly, Baltimore Framing has duly made claim against the payment bond issued on this Project by Safeco and now seeks relief pursuant to the Federal Miller Act, 40 U.S.C. § 3133 *et seq.* as set forth more fully below.

## II.　JURISDICTION

3.　　This Court has jurisdiction of this action under Title 40, Sections 3133(b)(3)(B) of the United States Code (the "Miller Act").

## III.　PARTIES

4.　　Baltimore Framing is a corporation duly organized and existing under the laws of the State of Maryland, with its principal office and place of business located at 9521A Horn Avenue Baltimore, Maryland 21236.

5.　　Upon information and belief, Safeco is a corporation duly organized and existing under the laws of the State of Washington, with its principal office and place of business located at Safeco Plaza, 4333 Brooklyn Avenue, NE, Seattle, Washington. Safeco provides and regularly engages in insurance business in the State of Delaware.

---

[1] LGS Consulting, LLC is not a necessary party to this litigation pursuant to the Miller Act. For informational purposes, LGS Group is a corporation duly existing under the laws of the State of Rhode Island, with its principal offices located at 80 Fisher Road, Unit 49, Cumberland, RI.

6.    Odyssey is a corporation duly organized and existing under the laws of the State of Utah, with its principal offices located at 5250 Challedon Drive, Virginia Beach, Virginia.

## IV.    FACTS

7.    Upon information and belief, on or before December 4, 2006, Odyssey entered into a contract with the United States of America for the construction of the Project.

8.    Pursuant to the Miller Act, Odyssey provided a payment bond issued by Safeco, bond no. 6431948, duly obligating Safeco for any outstanding sums due Baltimore Framing for labor, material or both provided to the Project (hereinafter, "Payment Bond"). The Payment Bond was executed in accordance with § 3131 of the Miller Act, and is in the sum of Five Million Four Hundred Ninety Five Thousand Seven Hundred Ninety Three and 00/100 Dollars ($5,495,793.00) (attached as Exhibit A).

9.    On or about December 4, 2006, Odyssey entered into a subcontract with LGS Consulting to perform certain light gauge framing and sheetrock services and supply related materials to the Project ("Odyssey Contract" attached as Exhibit B).

10.    In turn, on or about March 28, 2007, LGS Consulting contracted Baltimore Framing to supply all or a portion of the work outlined in the Odyssey Contract to the Project ("Baltimore Framing Subcontract" attached as Exhibit C).

11.    Pursuant to the Odyssey Contract and the Baltimore Framing Subcontract, Baltimore Framing supplied the light gauge framing and sheetrock materials and services to the Project. The portion of the labor and materials relevant to and subject of this cause of action that Baltimore Framing provided to the Project were supplied between on or about March of 2007 and September 28, 2007.

12.    Pursuant to the Baltimore Framing Subcontract, Baltimore Framing was to be paid Two Hundred Ninety Two Thousand Six Hundred and 00/100 Dollars ($292,600) as consideration for supplying the services and materials to the Project. *See* Exhibit C.

13.    Baltimore Framing also provided materials and services pursuant to three change orders approved by the General Contractor.   Specifically, the General Contractor approved Change Orders totaling Eighteen Thousand Nine Hundred Seventy Four and 90/100 Dollars ($18,974.11) (attached as Exhibit D).

14.    Despite providing the foregoing materials and services to the Project, Baltimore Framing was paid only a portion of the amounts due under the Baltimore Framing Subcontract. Specifically, Baltimore Framing was only paid Two Hundred Twenty Six Thousand Fourteen and 84/100 Dollars ($226,014.84).   A balance remains in the amount of Eighty Five Thousand Five Hundred Fifty Nine and 28/100 Dollars ($85,559.28), plus interest and attorneys' fees for the materials and services Baltimore Framing provided to the Project.

15.    Pursuant to the Miller Act, on November 1, 2007, Baltimore Framing timely notified Odyssey that it provided the light gauge framing and sheetrock services and materials by virtue of the Baltimore Framing Subcontract and that it was not duly paid all amounts due and owing.   Baltimore Framing further notified Odyssey that it intended to file a claim against the Payment Bond if it was not paid accordingly.   (See Notice of Intent to File a Bond Claim attached as Exhibit E).

16.    Despite the forgoing notice and demands, Baltimore Framing was not paid any additional amounts due and owing for the services and materials that it provided to the Project. Accordingly, Baltimore Framing made a claim against the Payment Bond.

17.     Despite this claim, Baltimore Framing still has not been paid the balance of Eighty Five Thousand Five Hundred Fifty Nine and 28/100 Dollars ($85,559.28), plus interest and attorneys' fees for the services and materials it provided to the Project.

## V.     CAUSE OF ACTION- FEDERAL MILLER ACT CLAIM

18.     Paragraphs one through seventeen of this Complaint are incorporated by reference as though fully set forth herein.

19.     Odyssey and Safeco are obligated to pay Baltimore Framing the full amount outstanding for the materials and labor provided to the Project pursuant to the Payment Bond issued by Safeco and pursuant to express language of the Miller Act.

20.     Despite demands by Baltimore Framing to Defendants to pay the full amount outstanding, they have refused and continue to refuse to pay the balance due to Baltimore Framing for the materials and labor it supplied to the Project.

21.     The date on which Baltimore Framing last supplied materials and/or labor to the Project was on or about September 1, 2007. All of the materials and labor supplied by Baltimore Framing under its agreement with LGS Consulting referred to herein were used in the prosecution of the work provided for in the principal contract between Odyssey and the United States of America, which is referenced *supra*.

22.     Suit is being filed within one year of the last supply of materials and/or labor by Baltimore Framing.

WHEREFORE, The United States of America, on behalf and for the use of the Plaintiff, LGS Group, LLC prays for judgment against the Defendants, jointly and severally, for the sum of Eighty Five Thousand Five Hundred Fifty Nine and 28/100 Dollars ($85,559.28), plus interest, the costs of this action, attorneys' fees and for such other and further relief as the Court

may deem just and proper.

DATED:  March 24, 2008

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

_____
Michael W. McDermott  (#4434)
Michele Sherretta Budicak (#4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600
mbudicak@ycst.com

*Attorneys for Plaintiff*

OF COUNSEL:

Jessica A. duHoffmann
Miles & Stockbridge P.C.
10 Light Street
Baltimore, MD 21202
Tele: 410-727-6464
Fax: 410-385-3700
Email: jduhoffm@milesstockbridge.com

# EXHIBIT A

**BOND NUMBER:** 6431948

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) **13 JUL 06** | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

**PRINCIPAL (Legal name and business address)**
Odyssey International
560 West 1700 South
Clearfield, UT  84015

**TYPE OF ORGANIZATION ("X" one)**
☐ INDIVIDUAL   ☐ PARTNERSHIP
☐ JOINT VENTURE   ☒ CORPORATION

**STATE OF INCORPORATION**
Utah

**SURETY(IES) (Name(s) and business address(es))**
SAFECO Insurance Company of America
A Washington Corporation
SAFECO Plaza, 4333 Brooklyn Avenue N.E.
Seattle, WA  98185

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 5 | 495 | 793 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 30 JUN 06 | W912BU-06-C-0008 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all person having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

Odyssey International — **PRINCIPAL**

| SIGNATURE(S) | 1. Whitney McBride (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
|---|---|---|---|---|
| NAME(S) & TITLE(S) (Typed) | 1. Whitney McBride, President | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
|---|---|---|
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

SURETY A

| NAME & ADDRESS | SAFECO Insurance Company of America SAFECO Plaza, 4333 Brooklyn Avenue N.E., Seattle, WA  98185 | STATE OF INC. Washington | LIABILITY LIMIT $ | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. | | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Stirling S. Broadhead, Attorney-In-Fact 1100 E. 6600 S., #400, Salt Lake City, UT 84121-2400 | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

25-205

STANDARD FORM 25-A (REV. 10-98)
Prescribed by GSA — FAR (48 CFR) 53.2228(c)

CORPORATE SURETY(IES) (Continued)

| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | |

| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | |

| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | |

| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | |

| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | |

| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b)  Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond.  The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4.  Corporations executing the bond shall affix their corporate seals.  Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5.  Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25-A (REV. 10-98) BACK

# EXHIBIT B



THIS IS A LEGALLY BINDING AGREEMENT UPON WHICH
ODYSSEY INTERNATIONAL INCORPORATED RELIES. PLEASE READ IT CAREFULLY.

## SUBCONTRACT AGREEMENT

PROJECT NAME:     C-17 FLIGHT SIMULATOR, DOVER AIR FORCE BASE, DELAWARE
CONTRACT:         W912BU-06-C-0008
LOCATION:         DOVER, DELAWARE
OWNER:            US ARMY CORPS OF ENGINEERS, PHILADELPHIA DISTRICT

THIS AGREEMENT is made at Clearfield, Utah on 12/4/2006, between Odyssey International Incorporated (Contractor) and LGS GROUP, LLC (Subcontractor), an independent contractor.

In consideration of these covenants, Contractor and Subcontractor agree as follows:

1.    SCOPE OF WORK

1.1 Subcontractor's Work.  The Work to be performed by Subcontractor under the terms of this Agreement consists of furnishing all supervision, management, expertise, scheduling, labor, materials, tools, implements, equipment, licenses, permits, fees, etc. to do all of the Work identified in 1.1.1 below, The Work to be performed by Subcontractor includes the Work specifically set forth in Agreement as well as any and all other incidental or related Work, including any Work reasonably necessary for a complete and per Project. Contractor reserves the right to issue additional and supplemental change orders, which shall be deemed, incorporated into this Agreement, all of which shall be referred to as the Work.

1.1.1    Description of Work

DIVISION(S):    SECTION: 5400    DESCRIPTION: COLD FORMED METAL FRAMING
                SECTION: 7100    DESCRIPTION: INSULATION
                SECTION: 6100    DESCRIPTION: ROUGH CARPENTRY (WOOD BLOCKING)
                SECTION: 7240    DESCRIPTION: EIFS
                SECTION: 7840    DESCRIPTION: FIRESTOPPING
                SECTION: 9250    DESCRIPTION: GYPUSM BOARD
                SECTION: 9510    DESCRIPTION: ACOUSTICAL CEILINGS
                SECTION: 9900    DECRIPTION: PAINTS AND COATINGS

INCLUSIONS: ALL WORK PERFORMED PER QUOTES DATED 9/23/06 AND 10/23/06 AND SEPARATE QUOTE SHEET SHOWING ADDENDUMS 3 AND 4 ADDS AND DEDUCTS. ALL ATTACHED AS EXHIBIT "A". ALL WORK AS INDICATED IN PLANS AND SPECIFICATIONS, AND AS REVISED IN ADDEMDUMS 1-4. WORK SCOPE INCLUDED SUPPYING AND INSTALLING MATERIALS REQUIRED FOR: COLD FORMED METAL FRAMING, INSULATION, WOOD BLOCKING AS REQUIRED, EIFS SYSTEM, FIRESTOPPING, GYPSUM BOARD, ACOUSTICAL CEILINGS, AND PAINT AND EPOXY COATINGS. METAL FRAMING INCLUDES ALL LAYOUT AND INSTALLATION OF THE HOLLOW METAL FRAMES

Additional Commercial Terms:  To supply all necessary labor, materials, equipment, including but not limited to all permits, fees, taxes, licenses, delivery charges, hoisting, and daily clean-up (including dump fees), as necessary to provide a complete scope of work as described, per the plans, specifications, addenda's, drawings, schedules and any

supplemental and general requirements. Subcontractor agrees to comply with all applicable codes, ordinances, and or governing agencies having authority over the work. Each subcontractor will be required to work at a minimum, a 5-day work week and have a foreman who is fluent in English present at the jobsite with decision making capabilities during all working hours. Subcontractor agrees to comply with all OSHA and Odyssey International Incorporated accident and prevention plans and safety policies. Each subcontractor shall comply with all requirements in the Contract Work Hours and Safety Standards Act.

**ALL ABOVE FOR THE LUMP SUM OF $ 431,055.00**

1.2 Owner Furnished Materials.

Not Applicable.

1.3 Shop Drawings. Within three weeks from the date of this Subcontract, Subcontractor will submit shop drawings, samples, templates, and material lists, and will take any action needed to provide for anchorage, embedded items, long-lead-time orders, and the like. Subcontractor will check the drawings and advise Contractor in writing if any item to be furnished by Subcontractor will not fit the space provided, or if any special sequence of construction is necessary. Subcontractor will maintain as-built drawings up to date at all times.

2.      CONTRACT DOCUMENTS

2.1 Contract Documents Defined. The Contract Documents for this Agreement consist of this Subcontract Agreement, any and all addenda to this Subcontract Agreement, the bid package documents, including the plans and specifications, the prime contract and general conditions between Contractor and Owner, together with any amendments or change orders to this Subcontract Agreement, all of which are collectively referred to as the Contract Documents. The Contract Documents form this Subcontract Agreement, all of incorporated. The Contract Documents are available from Contractor's office at 560 West 1700 South, Clearfield, Utah, and Subcontractor acknowledges that it has carefully examined them and understands them completely.

2.2 Flow Down of Contract Documents. Subcontractor and its lower tier subcontractors and suppliers accept all Contract Documents and are bound by them. Subcontractor acknowledges that it understands and accepts the concept and procedures of the prime contract between Contractor and Owner and that they are binding upon Subcontractor. Subcontractor is bound to Contractor by the Contract Documents and shall assume toward Contractor, with respect to Subcontractor's performance, the obligations and responsibilities, which Contractor assumes toward Owner. The Contract Documents shall be construed in accordance with the laws of the State of Delaware. Subcontractor shall bind its lower-tier Subcontractors to the performance obligations and responsibilities, which Subcontractor assumes toward Contractor through appropriate and like flow-down provisions in the Subcontractor's Agreements with its sub-subcontractors and suppliers.

2.3 Examinations and Acceptance of Contract Documents and Site. Subcontractor represents that it has carefully examined the plans and specifications, if any, for the Work, and has fully acquainted itself with all other conditions relevant to the Work, the site of the Work and its surroundings. Subcontractor agrees to assume the risk of such conditions, and will, regardless of such conditions or the expense or difficulty of performing the Work, fully complete the Work for the stated contract price. Except for items and information which Contractor is expressly obligated under this Agreement to furnish to Subcontractor, information on the site of the Work and local conditions at the site furnished by Contractor are not guaranteed by Contractor and are furnished for the convenience only of Subcontractor.

2.4 Acceptance of Intent of Contract Documents. The specifications and drawings, if any, may not be complete in every detail. Subcontractor shall comply with their manifest intent and general purpose, taken as a whole, and shall not avail itself of any errors or omissions to the detriment of the Work. Should any conflict, error, omission or discrepancy appear in the drawings and specifications, Subcontractor shall notify Contractor at once and Contractor will issue written instructions to be followed. If Subcontractor proceeds with any of the Work in question prior to receiving written instructions, all necessary corrections shall be at Subcontractor's expense.

2.5 Priority of Contract Documents. The Contract Documents should, if possible, be read so as to give all provisions meaning and application. If, however, a conflict exists between this Agreement and other Contract Documents, this Agreement shall have priority

and control. If this Agreement is silent as to a provision contained in other Contract Documents, that silence does not imply non-enforcement of the contract provision.

## 3.    PROSECUTION OF WORK

**3.1 Commencement of Work.** Subcontractor shall commence the Work to be performed under this Agreement no less than three days after receipt of Notice to Proceed from Contractor and shall prosecute and complete its Work in accordance with the Contract Documents.

**3.2 Prosecution of the Work.** Subcontractor shall proceed with each and every part of this Agreement in a prompt and diligent manner. Subcontractor, without additional compensation, shall perform this Subcontractor Agreement at the times, in the order and in the manner as Contractor may direct. Subcontractor shall commence, continue and complete its performance of the Work so as not to delay Contractor, Owner, or other contractors or subcontractors so as to insure timely completion of the prime contract.

**3.3 Schedules.** Subcontractor shall furnish sufficient forces to assure proper performance of its Work under this Agreement in strict compliance with all schedules, including amended schedules, as may be required or provided by Contractor. At the request of Contractor, Subcontractor shall provide a schedule of its Work under this Agreement showing timely completion.

**3.4 Time is of the Essence.** Any time specified for the completion of this Agreement, or portion thereof, is a material provision of this Agreement, and time is of the essence. Subcontractor agrees to be bound by the completion dates and schedule, if any, or subsequent amended schedules.

**3.5 Liquidated Damages.** Regardless of whether Contractor is assessed liquidated damages by Owner, Subcontractor shall pay to Contractor the sum of $1000 per calendar day for any period during which the Subcontractor's Work under this Agreement exceeds the time provided for completion. Subcontractor and Contractor agree that this assessment of liquidated damages reasonably approximates actual damages, is not a penalty and fairly compensates Contractor for damages which are difficult or impossible to quantify caused by the late completion. Damages assessed only after sub-contractor is given notice of their damages, delays and/or lack of performance.

**3.6 Quality Personnel.** Subcontractor shall be responsible for selecting personnel who are well qualified to perform the required Work. All Subcontractor personnel entering Owner's installation shall conform to all security regulations and other regulations, rules and laws that may be in effect during the period of this Agreement. Any employee of Subcontractor deemed by Contractor, in Contractor's ᵇretion, to be objectionable shall be removed from the jobsite immediately on Contractor's request and shall be promptly replaced by ᵇ..bcontractor at no extra expense to Contractor.

**3.7 Right of Joint-Check Payment.** Contractor, at its option, may make any payment due by check payable jointly to Subcontractor and any of its Subcontractors or suppliers who have performed Work or furnished materials under this Agreement.

**3.8 Proper Superintendence.** At all times during performance of this Agreement and until the Work is completed and accepted, Subcontractor shall directly superintend the Work or assign and have on the jobsite a competent superintendent who is satisfactory to Contractor and who has authority to act for Subcontractor.

**3.9 Subcontractor Responsible for Own Work.** If subcontractor fails to supply sufficient forces, equipment or materials to prosecute the Work according to the schedule or other requirements of this Agreement, Contractor may use its own forces, equipment or materials to supply such portions of the Work as are necessary to increase the rate of progress of the Work and Contractor may deduct the reasonable cost thereof with reasonable overhead and profit from the subcontractor.

**3.10 Subcontractor Responsibility for Own Work.** Subcontractor shall be responsible for his own work, property and/or materials until completion and final acceptance of the Contract by the Owner, shall bear the risk of any loss or damage until such acceptance and shall pay promptly for all materials and labor furnished to the project. In the event of loss or damage, he shall proceed promptly to make repairs or replacement of the damaged work, property and/or materials at his own expense as directed by the ᶜontractor. Subcontractor waives all rights he might have against Owner and Contractor for loss or damage to Subcontractors' Work, property or materials.

**3.11 Warranty.** During the warranty period established by the Contract Documents, and if no such period is specified, for a ᵖeriod of one year from the date of Project completion, Subcontractor agrees to make good, solely at its expenses, all defects due to ᵈᵉfective workmanship or materials and also all damage to all other work resulting therefrom. Subcontractor further agrees to execute, in ᵂriting, any warranties, maintenance agreements or other documents related to its work as required by the Contract Documents. Subcontractor's responsibility for latent defects extends beyond the warranty period to the extent applicable statutes permit.

4.   **PAYMENT**

    4.1 Contract Price.  In consideration of the complete and timely performance of all Work under this Agreement, Contractor shall pay to Subcontractor the sum of ($431,055) FOUR HUNDRED THIRTY ONE THOUSAND FIFTY FIVE AND NO/100 DOLLARS.  All pay requests under this Agreement shall be rounded to the nearest dollar.

    4.2 Subcontractor will be paid only after Contractor Receives Payment.  CONTRACTOR'S RECEIPT OF PAYMENT FROM OWNER IS AN EXPRESS CONDITION PRECEDENT TO CONTRACTOR'S PAYMENT OBLIGATIONS TO SUBCONTRACTOR.

    4.3 Information Necessary for Payment.  Regardless of the time of performance under this Agreement, Subcontractor shall provide the following certificates, schedules and information to Contractor prior to any payment under this Agreement.

    (a)   On or before the 25th day of each month, Subcontractor shall deliver to Contractor an application for payment showing the percentages of completion and value of each item of work completed to that date.

    (b)   Certificates of insurance. (See Paragraph 7 of the Agreement.)

    (c)   Invoices showing each principal category of Work, which substantiates amounts requested in such detail as, requested by Contractor for determining progress payments.

    (d)   Certified payroll information in compliance with Davis Bacon and related act regulations, if required.

    (e)   As-builts updated as required by Project Manager.

    (f)   Submittal information and shop drawings as required by Contractor.

    (h)   Partial or final release of claims, executed by Subcontractor, its sub-Subcontractors and suppliers. (Subcontractor acknowledges compensation for execution of these partial and final releases.)

    (i)   Current State Contractors License

    4.4 Right to Hold Retention.  Contractor may, at its option, withhold retention from subcontractor's approved progress payments.  The rate of retention shall be equal to the percentage retained from Contractor's payment by the Owner for the subcontract Work, provided such rate is not more than 5% of such payment.  If there is no provision for retention in the Contract Documents, Contractor may require a rate of retention not to exceed 5% of the value of the completed portion of the subcontract work.

    4.5 Right of Offset.  Contractor may offset against any sums due Subcontractor under this Agreement the amount of any idated obligations of Subcontractor to Contractor, whether or not arising out of this Agreement.

    4.6 Right to Withhold upon Breach.  In the event of any breach of Subcontractor of this Agreement or in the event of the assertion by others of any claim against Owner, Contractor or Contractor's surety, which claim arises out of Subcontractor's performance, Contractor may, but is not required to, retain out of any payments due to Subcontractor an amount sufficient to protect Contractor from any and all loss, damage or expense therefrom, until the claim has been adjusted by Subcontractor to the satisfaction of Contractor.

    4.7 Payment Is Not Approval.  It is not to be inferred from the fact that Contractor makes payments to Subcontractor under this agreement that Contractor accepts, or has approved, any work performed by Subcontractor.  Contractor may not waive its right to insist on full compliance by Subcontractor with all the requirements of the contract documents except in a written document, approved in writing by Owner, and specifying the precise things accepted by Contractor.

5.   **CHANGES**

    5.1 Consent to Changes.  Contractor may make changes in the Work to be performed and materials to be furnished under this Agreement at any time by written order and without notice to Subcontractor's surety.  Subcontractor shall promptly perform its Agreement as changed.

    5.2 Written Change Orders.  No alteration, addition, omission or change shall be made in the Work or the method or manner of performance of the Work except upon written change order of Contractor.  Any change or adjustment in the contract price by virtue of such Change Order shall be specifically stated in the applicable Change Order.  Prior to the issuance of any Change Order, contractor may require Subcontractor to furnish to Contractor a detailed breakdown showing the value of the Work, labor, services and materials altered, added, omitted or changed by the proposed Change Order.  If an agreement as to monetary allowance or any other term in the Change Order cannot be reached, Contractor, by an authorized representative, may direct Subcontractor in writing to perform the Work with the final adjustment reserved until final completion of both this Agreement and the Prime Contract.  The monetary amount for the performance of any Change Order shall not exceed the allowance set forth in Subcontractor's prior price breakdown.

**5.3 Limitation of Time Extensions Arising from Changes.** Any extension of time needed as a result of a proposed Change Order shall be requested by Subcontractor, in writing, prior to the issuance of the Change Order, and shall be incorporated into the change order at the discretion of Contractor.

**5.4 Changes Incorporated into Contract Documents.** All changes in the Work ordered in writing by Contractor shall be deemed to be part of the Work under this Agreement and shall be performed and furnished in strict accordance with all of the terms and provisions of the Contract Documents.

## 6.    CLAIMS AND DISPUTES

**6.1 Claims for Extras or Omissions.**  A claim for extras or omissions will not be honored for payment or credit unless authorized in writing by the Contractor prior to the commencement of the Work (extra or omissions) or delivery of materials resulting from the claimed extras or omissions. This condition applies equally to omissions, as may be required, if any or all of the Work, for which omissions a credit order will be allowed on the Subcontract price by the Subcontractor.

**6.2 Timely Notice of Claim.** Subcontractor agrees to make all claims, other than claims for extras or omissions, for which Owner is or may be liable in the manner provided in the Contract Documents for like claims by Contractor upon Owner. Notice of such claims shall be given by Subcontractor to Contractor within one week prior to the beginning of Subcontractor's Work for which the claim is to be made, or immediately upon Subcontractor's knowledge of the events which comprise the claim, whichever shall occur first. Otherwise the claim shall be deemed waived.

**6.3 Agreement to Mediate Dispute.** The Contractor and Subcontractor shall submit all unresolved claims, counterclaims, disputes, controversies, and other matters in question between them or arising out of or relating to this Agreement or the breach of the Agreement (Dispute) to mediation prior to either party initiating against the other a demand for arbitration pursuant to Paragraph 6.4 below, unless delay in initiating or prosecuting a proceeding in an arbitration or judicial forum would prejudice the Contractor or Owner. The Contractor and Subcontractor shall agree in writing as to the identity of the mediator and the rules and procedures of mediation. If the Contractor and the Subcontractor cannot agree, the dispute shall be submitted to mediation under the then current Construction Industry Mediation Rules of the American Arbitration Association.

**6.4 Agreement to Arbitrate.** Notwithstanding other Contract Documents provisions to the contrary, all Disputes that the Contractor and Subcontractor are unable to resolve by mediation shall be decided by arbitration, subject to the limitations stated in graph 6.5 below. The Agreement to arbitrate and any other Agreement or consent to arbitrate entered into in accordance with this ...eement shall be specifically enforceable under the prevailing law of the State of Delaware; or if a court rules that Delaware does not have jurisdiction, the prevailing law of any court having jurisdiction. The Contractor and Subcontractor shall agree in writing as to the identity of the arbitrator(s) and the rules and procedures of the arbitration. If the Contractor and Subcontractor do not agree, then the Contractor and the Subcontractor shall submit the dispute to arbitration under the then current Construction Industry Rules of the American Arbitration Association.

**6.5 Notice of Arbitration Demand.** Notice of demand for arbitration must be filed in writing with the other party to this Agreement and with the Arbitrator(s). The demand must be made within a reasonable time after the dispute has arisen, but not prior to or during the pendency of the mediation as agreed in paragraph 6.3. In no event may the demand for arbitration be made after the date on which institution of legal or equitable proceedings based on such disputes in question would be barred by the applicable statute of limitations.

**6.6 Parties to the Arbitration.** No arbitration arising out of or relating to this Agreement may include, by consolidation, joinder or in any other manner, any person or indemnitor who is not a party to this Agreement unless both parties agree otherwise in writing. No consent to arbitration in respect of a specifically described dispute will constitute consent to arbitrate any other dispute which is not specifically described in such consent.

**6.7 Final Award.**  The award rendered by the arbitrator(s) will be final, judgment may be entered upon it in any court having jurisdiction, and the award will not be subject to modification or appeal. In any judicial proceeding to enforce this Agreement to arbitrate, the only issues to be determined will be those set forth in 9 U.S.C. §4, Federal Arbitration Act, and the court without a jury shall determine these issues. All other issues, such as arbitrability, prerequisites to arbitration, compliance with contractual time limits, applicability of indemnity clauses, clauses limiting damages and statutes of limitations shall be for the arbitrator(s), whose decision shall be final and binding. There shall be no interlocutory appeal of an order compelling arbitration.

**6.8 Continuation of Work.** Unless otherwise agreed in writing or upon default of Subcontractor as provided by this Agreement, the Subcontractor shall continue to carry out its responsibilities under this Agreement during any Dispute, and the Contractor shall c ...e to make payments in accordance with this Agreement.

## 7. INSURANCE AND INDEMNITY

**7.1 Subcontractor's Liability Insurance.** Before commencing work on the project, Subcontractor and its subcontractors of every tier will supply to Contractor duly issued certificates of insurance, which name Contractor and owner as additional insureds, per CG2010 185 or CG2010 10/01 with CG2037 10/01 or their equivalent. That the liability insurance policies, including commercial liability, automobile liability, and excess liability, shall be endorsed to provide (1) that the insurance shall apply to Contractor as though a separate policy had been issued to Contractor, and (2) that the coverage afforded to Contractor is primary and any other insurance in force for Contractor will be excess and will not contribute to the primary policies. If additional insurance coverage or greater policy limits are required by the contract documents, said provisions shall control.

**7.1.1 Worker's Compensation.** Claims under Worker's compensation, disability benefits and other similar employee benefits acts that are applicable to the Work performed;

**7.1.2 Employers Liability.** Claims for damages because of bodily injury, occupational sickness or disease or death of Subcontractor's employees under any applicable employer's liability law;

**7.1.3 Non-Employee Liability.** Claims for damages because of bodily injury or death of any person other than Subcontractor's employees;

**7.1.4 Bodily Coverage.** Claims for damages insured by usual personal injury liability coverage that are sustained (1) by any person as a result of an offense directly related to the employment of such person by the Subcontractor or; (2) by any other person;

**7.1.5 Property Liability Claims.** Claims for damages other than to the Work itself, because of injury to or destruction of tangible property, including loss of use; or

**7.1.6 Motor Vehicle Liability.** Claims for damages because of bodily injury or death of any person or property damage arising out of the ownership, maintenance or use of any motor vehicle.

**7.2 Comprehensive General and Automobile Liability Insurance.** The Subcontractor's Comprehensive General and Automobile Liability Insurance, as required by this Agreement, shall be written for not less than the following limits of liability:

**7.2.1 Comprehensive General Liability:**
Bodily Injury:
$1,000,000.00 each occurrence
$2,000,000.00 aggregate

Property Damage:
$500,000.00 each occurrence
$1,000,000.00 aggregate
Or $1,000,000 combined single limit, $2,000,000 aggregate.

**7.2.2. Comprehensive Automobile Liability:**
Bodily Injury:
$1,000,000.00 any person/accident

Property Damage:
$500,000.00 per accident
Or $1,000,000 combined single limit per accident

**7.3 Single Policy or Combination.** Comprehensive General Liability Insurance may be obtained under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an excess or umbrella liability policy.

**7.4 Cancellation of Polices.** The foregoing policies shall contain a provision that coverage afforded under the policy shall not be canceled or expire until at least thirty days written notice has been given to the Contractor and shall include coverage for this Agreement and an endorsement making the Owner and General Contractor an additional insured under the policies.

**7.5 Provide Certificates:** Prior to commencement of the Work, Subcontractor shall furnish the original of its certificate of insurance showing such coverage to be in force directly to Contractor. Subcontractor shall maintain during the entire period of its performance under the Agreement the minimum insurance required.

**7.6 Waiver of Subrogation.** The Subcontractor waives all rights against the Contractor, its surety, the Owner and Contractor's employees for damages during construction covered by any property insurance as set forth in the Contract Documents. Subcontractor agrees to require similar waivers from its Subcontractors, consultants and agents.

**7.7 Indemnity.** To the fullest extent permitted by law, subcontractor shall indemnify and hold harmless Contractor and Owner and their successors and assigns and all of their agents and employees from and against all claims, damages, losses and expenses including but not limited to attorney's fees arising out of or resulting from the performance of Subcontractor's Work under this Agreement provided that any such claims, damages, loss or expense is attributable to bodily injury, sickness, disease, death or damage to or destruction of tangible property (other than the Work itself), including the loss of use resulting there from, and caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly employed by Subcontractor or anyone for whose act Subcontractor may be liable; provided however, that this indemnification provision shall not apply to any damages caused by or resulting from the fault of any person indemnified hereunder. In any and all claims against the person indemnified hereunder by any employee of Subcontractor or anyone directly or indirectly employed by Subcontractor, the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under workers compensation acts, disability benefit acts or employee benefits acts. Contractor shall have the right to withhold from any payment due or to become due to Subcontractor an amount sufficient to protect and indemnity Contractor from any and all such claims, loss, costs, expense, liability, damage or injury including attorney's fees. Subcontractor will provide the defense for the parties indemnified hereunder for any such claims, and will employ counsel satisfactory to the parties indemnified. This indemnity shall be covered by Subcontractor's comprehensive general liability insurance policy.

8.     BONDS    Not applicable.

9.     **PERMITS, LICENSES, TAXES, FEES, ETC.**

Subcontractor shall, at its own cost and expense, apply for and obtain all necessary permits and licenses and shall conform tly to the laws and ordinances enforced in the locality under which this Agreement is being performed. Subcontractor shall hold ...nless Contractor against any liability by reason of Subcontractor having failed to pay federal, state, county or municipal taxes or fees.

10.    **TERMINATION**

**10.1 Termination for Default.** The Contractor may terminate the Subcontractor as follows:

a.     In the same manner and upon the same notice and terms as the Contractor's performance may be terminated by the Owner;

b.     If Subcontractor is adjudged bankrupt, or if it makes a general assignment for the benefit of its creditors, or if a receiver is appointed on account of its insolvency;

c.     If Subcontractor persistently or repeatedly refuses or fails to supply enough properly skilled Workers or proper materials;

d.     If Subcontractor fails to make prompt payment to its employees, subcontractors, or suppliers;

e.     If Subcontractor disregards instructions of the Contractor or laws and ordinances of any public authority having jurisdiction; or

f.     If Subcontractor fails to observe or perform the provisions of this Agreement.

The Contractor may, without prejudice to any right or remedy and after giving the Subcontractor and its surety, if any, five days written notice, terminate Subcontractor's right to proceed with the Work. In the event of such notice, the Contractor may take over and prosecute the Work to completion, by Agreement or otherwise, and the Subcontractor shall be liable to the Contractor for any excess cost occasioned by the Contractor; and, in such case, the Contractor may take possession of and utilize in completing the Work such materials, equipment, tools, and machinery that are on site for the Work and necessary for the Work.

If Contractor so terminates this Agreement, Subcontractor shall not be entitled to any further payment under this Agreement until Subcontractor's Work has been completed and accepted by Owner and payment has been received by Contractor from Owner with respect thereto. In the event that the unpaid balance due exceeds Contractor's cost of completion, the difference shall be paid to S...tractor; but if such expense exceeds the balance due, Subcontractor agrees to promptly pay the difference to Contractor.

10.2 Termination for Convenience. Contractor shall have the right to terminate this Agreement, by written notice, without Subcontractor being in default, for any cause or for its own or Owner's convenience, and require Subcontractor to immediately stop Work. In such an event, Contractor shall pay Subcontractor for that Work actually performed in an amount proportionate to the sum payable under this Agreement after payment is received by Contractor from Owner. Contractor shall not be liable to Subcontractor for any other costs nor for prospective profits on Work not performed.

## 11.    COMPLIANCE WITH LAW AND SAFETY

Subcontractor agrees to comply in all respects with federal, state and local law applicable to the prosecution of Work under this Agreement, including such specific laws to which Contractor is bound by the Contract Documents. Such compliance shall include, but not be limited to, payment by Subcontractor of wages to employees of Subcontractors in compliance with the Davis-Bacon Act and the maintenance of a drug-free work place as such laws and others may apply. Subcontractor's failure to comply with federal, state and local law applicable to the persecution of Work under this Agreement shall be grounds for termination for default of this Agreement.

## 12.    CLEAN UP AND FINAL INSPECTION

12.1 Clean Up. Subcontractor shall at all times during the performance of the Work, and as directed by Contractor, remove from the jobsite and the vicinity thereof all debris and rubbish caused by Subcontractor's operations.

12.2 Inspection. Contractor and Subcontractor will jointly conduct a pre-final inspection prior to Subcontractor requesting a final inspection. Any discrepancies noted will be corrected prior to any final inspection. Contractor may schedule more than one pre-final inspection if it determines it necessary. When Subcontractor is ready for final inspection, it shall make a request of final inspection to Contractor. The final inspection shall be requested in advance as agreed upon during project negotiations, then the request shall be submitted a minimum of one workday prior to the desired final inspection date. Any discrepancies noted shall be corrected within the time specified by Contractor and prior to final payment.

## 13.    INDEMNIFICATION AGAINST MECHANICS LIENS AND PAYMENT BOND CLAIMS

Subcontractor shall defend, indemnify and hold Contractor, Owner and Contractor's surety harmless from any and all claims, suits, losses or liability including mechanic's liens, payment bond claims, attorney's fees and litigation expenses arising out of Contractor's failure to pay persons furnishing labor, services, material or equipment in connection with the Work. Subcontractor shall promptly and diligently take action at its own expense to satisfy, remove or discharge such claims. Contractor shall have the right to withhold from any payment due or to become due to Subcontractor an amount sufficient to protect and indemnify Contractor from any and all such claims, suits, losses, liability including reasonable attorney's fees and expense of litigation.

## 14.    MISCELLANEOUS PROVISIONS

14.1 Non-Discrimination. In connection with the performance of this Agreement, Subcontractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, age, material status, being handicapped or a disadvantaged person.

14.2 Good Faith. Subcontractor shall exercise all reasonable care and diligence to prevent any actions or conditions, which could result in a conflict with Contractor's best interests. This obligation shall apply to the activities of the employees and agents of Subcontractor in their relations with the employees and agents of Contractor and Owner. Subcontractor, its employees or agents shall not communicate with representatives of Owner without the express written permission of Contractor.

14.3 Delaware Law. This Agreement shall be construed and governed by the laws of the State of Delaware.

14.4 Attorney's Fees. Should either Contractor or Subcontractor employ any attorney to protect or enforce its interests arising under this Agreement or to institute suit or demand arbitration to construe, enforce or rescind any of the provisions hereof, or to recover on a surety bond furnished by a party to this Agreement, the prevailing party shall be entitled to recover reasonable attorney' fees, costs and expenses incurred thereby.

14.5 Severability. If any portion of this Agreement is held as a matter of law to be unenforceable, the remainder of this ment shall be enforceable without such provisions.

Page 8

14.6  Limitation and Assignment. The Contractor and Subcontractor each bind itself, its successors, assigns and legal representatives to the terms of this Agreement. Neither the Contractor nor the Subcontractor shall assign or transfer its interest in this Agreement without the written consent of the other; provided however, Contractor may assign this Agreement to Owner if required under the Contract Documents and if Owner accepts such assignments by notifying Subcontractor in writing. Subcontractor hereby consents to such assignment to Owner and agrees to be bound to Owner as Contractor's assignee by the terms of this Agreement.

14.7 Incorporation of Previous Agreements. This Agreement, including incorporated portions, constitutes the entire Agreement between the parties. No oral representations or other Agreements have been made by Contractor except as stated in this Agreement. This Agreement may not be changed in any way except as provided herein, and no term or provision hereof may be waived by Contractor except in writing signed by its duly authorized officer or agent.

Notices. All notices required by this Agreement or other communications to either party by the other shall be deemed given when made in writing and deposited in the United States Mail, certified, postage prepaid, addressed as follows:

14.7  Government Required Insert Clauses. These are required to be included in all subcontractors, based on their applicability, in their entirety in emphasis to any and all other sections and clauses in the specification as previously included in the contract

| | |
|---|---|
| 14.7.1 | 52.203-6 RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1995) 100,000 OR GREATER |
| 14.7.2 | 52.203-7 ANIT-KICKBACK PROCEDURES (JUL 1995) 100,000 OR GREATER |
| 14.7.3 | 52.209-6(b) FIRST TIER SUBCONTRACTORS TO DISCLOSE DEBARRMENT OR PROPOSED DEPARRMENT. "PROTECTING THE GOVERNMENTS INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEPARRMENT (JUN 2005 25,000 OR GREATER |
| 14.7.4 | 52.222-2 PROHIBITION OF SEGRAGATED FACILITIES (FEB 1999) |
| 14.7.5 | 52.222-4 CONTRACT WORK HOURS AND SAFETY STANDARD ACT – OVERTIME COMPENSATION (SEP 2000) 100,000 OR GREATER |
| 14.7.6 | 52.222-11 SUBCONTRACTS (LABOR STANDARDS (FEB 1998)) |
| 14.7.7 | 52.222-26 EQUAL OPPORTUNITY (APR 2002) |
| 14.7.8 | 52.222-27 AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (FEB 1999) 10,000 OF GREATER |
| 14.7.9 | 52.222-35 EQUAL OPPORTUTNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (DEC 2001) 25,000 OR GREATER |
| 14.7.10 | 52.222-36 AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998) 10,000 OR GREATER |
| 14.7.11 | 52.222.37 EMPLOYMENNT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (DEC 2001) 10,000 OR GREATER |
| 14.7.12 | 52.223-13 CERTIFICATION OF TOXIC CHEMICAL RELEASE REPORTING 100,000 OR GREATER |
| 14.7.13 | 52.223-4 TOXIC CHEMICAL RELEASE REPORTING (AUG 2003) 100,000 OR GREATER |
| 14.7.14 | 52.224-2 PRIVACY ACT |
| 14.7.15 | 52.225-13 RESTRICTIIONS ON CERTAIN FORIGHN PRUCHASES (DEC 2003) |
| 14.7.16 | 52.227-1 AUTHORIZATION AND CONSENT |
| 14.7.17 | 25.237-27 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (OCT 2003) |
| 14.7.18 | 52.236-12 CLEANING UP (APR 1984) |
| 14.7.19 | 52.244-6 SUBCONTRACTS FOR CONNERCIAL ITEMS (DEC 2004) |
| 14.7.20 | 52.248-3 VALUE ENGINEERING – CONSTRUCTION (FEB 2000) |
| 14.7.21 | 252.225-7001 PROHIBITION ON PERSONS CONVICTED OR FRAUD OR OTHER DEFENCE-CONTRACT-RELATED FELONIES (DEC 3004) |
| 14.7.22 | 252.225-7016 RESTRICTION ON ACQUISITION OF BALL AND ROLLER BEARINGS (MAY 2004) |
| 14.7.23 | 252.226-7001 UTILIZATION OF INDIAN ORGANIZATION AND INDIAN-OWNED ECONOMIC ENTERPRIZES, AND NATIVE HAWAIIAN SMALL BUSINESS CONCERNS (SEP 2004) |
| 14.7.24 | 252.247-7024 NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA (MAR 2000) |

Contractor:
**ODYSSEY INTERNATIONAL**
**560 WEST 1700 SOUTH**
**CLEARFIELD, UT. 84015**

Subcontractor:
**LGS GROUP, LLC**
**80 FISHER ROAD**
**UNIT 49**
**CUMBERLAND, RI 02864**

| Telephone: | 800-958-8582 |
| FAX: | 800-958-8284 |

| Telephone: | 401-333-9995 |
| FAX: | 401-334-6003 |

CONTRACTOR AND SUBCONTRACTOR HAVE CAREFULLY AND COMPLETELY READ THIS ENTIRE AGREEMENT, UNDERSTAND THEIR RIGHTS AND OBLIGATIONS, AND CERTIFY THAT THEY SIGN HAVING FULL AND COMPLETE AUTHORITY.

1/30/07
Date

Contractor:     ODYSSEY INTERNATIONAL,

By _____

Whitney McBride
(Print Name of Person Signing on Behalf of Contractor)

Its _____ President

1/35/bu 7
Date

Subcontractor:     L.G.S GROUP, LLC

By _____

JAMES LAWSON
(Print Name of Person Signing on Behalf of Subcontractor)

Its _____ V.P

Page 10

# EXHIBIT C

Oct 30 07 09:25a                                                    p.2



**LGS Consulting, LLC**
80 Fisher Road, Unit 49
Cumberland, RI 02864

Phone: (401) 333-9995
Fax (401) 334-9670

E-mail: info@lgsgroupllc.com

February 7, 2007

Mark Miller
LGS Group-Baltimore Framing LLC
9521A Home
Baltimore, MD 21236
U.S.A.

**RE: Project Acceptance**

The undersigned has reviewed the plans for <u>C17 Flight Simulator, Dover AFB</u> and has received from LGS Consulting, LLC the contract amount for the above project in the amount of $<u>292,600.00</u>.

We hereby accept the contract.

We further understand that a copy of the contract with <u>Odyssey</u> will be forwarded to us under separate cover after the execution of this agreement.

We further understand that submittal have been submitted on our behalf and that the cost associated will be paid upon receipt of an invoice

Signed this date: _3/28/07_

By: _____

For: LGS Group-Baltimore Framing LLC_____

# EXHIBIT D

Nov 21 07 05:24p                                                                                    p.1

# Change Order Log

**LGS GROUP, LLC**          **Date:**              **5/23/07**
**9309 BELAIR RD.**         **Owner: ODYSSEY INT.**
**Baltimore, Md. 21236**    **Contract amt:**_____
**410-256-8687**            **Project name: C-17 FLIGHT**

S = Submitted  A = Approved  R = Rejected

| C.O. # | Description | Amount | Schedule change | S | A | R |
|---|---|---|---|---|---|---|
| 1 | Labor/Mat/Gov/% | $10,588.96 | (See C/O detail) | x | | |
| 2 | | | | | | |
| 3 | Overtime/Overhead | $7,012.20 | (See C/O detail) | | | |
| 4 | PATCH WORK | $3,289.74 | (See C/O detail) | | | |
| 5 | | | (See C/O detail) | | | |
| 6 | | | (See C/O detail) | | | |
| 7 | | | (See C/O detail) | | | |
| 8 | | | (See C/O detail) | | | |
| 9 | | | (See C/O detail) | | | |
| 10 | | | (See C/O detail) | | | |
| 11 | | | (See C/O detail) | | | |
| 12 | | | (See C/O detail) | | | |
| 13 | | | (See C/O detail) | | | |
| 14 | | | (See C/O detail) | | | |
| 15 | | | (See C/O detail) | | | |
| 16 | | | (See C/O detail) | | | |
| 17 | | | (See C/O detail) | | | |
| 18 | | | (See C/O detail) | | | |
| 19 | | | (See C/O detail) | | | |
| 20 | | | (See C/O detail) | | | |

# LGS Group, LLC

**9309 Belair Road Perry Hall, Md. 21236**
**Phone- (410-256-8687)**

# CHANGE ORDER # <u>001</u>

|  |  |
|---|---|
| | Date:    June 22, 2007 |
| **TO:** **U.S. ARMY CORPS OF ENGRS.** **C-17 Flight Simulator** **Dover, Delaware** | Job Name/ Location : |
| | Job Number:  C-17 | Job Phone |
| | Existing Contract No. | Date of Existing Contract: |

We hereby agree to make the change(s) specified below:

| | | |
|---|---|---|
| Labor: Three carpenters working 40 hours each at the scale wage of $37.64 = | $ | 4,516.80 |
| Material: | $ | 3,893.76 |
| Social Security: | $ | 345.54 |
| Workers Compensation: | $ | 451.68 |
| 10% Profit | $ | 920.78 |
| 5% Overhead | $ | 460.40 |
| | | |
| Total | $ | 10,588.96 |

The above changes will extend  the scheduled
completion date by 5 weeks

**Note:** This Change Order becomes part of and is incorporated in the existing contract.

WE AGREE hereby to make the change(s) specified above at this price.                    **$10,588.96**

**Date:**                              22-Jun-07

Signature _____

**ACCEPTED-** The above prices and specifications of this Change Order are satisfactory and are
hereby accepted. All work to be performed under the same terms and conditins as specified in the original
contract unless otherwise specified.          Date of Acceptance:_____

Signature: _____

# Change Order

*001*

**LGS GROUP LLC,**

**9309 Belair Rd.**

**Baltimore MD.21236**

**410-256-8687**

Date: June 22, 2007

Owner: US Army Corps of Engineers

Project number: C-17 Flight Simulator Dover

Change order number: 001

Original contract date: 12/4/06

| Change (add or delete) the following work to the original contract: |
|---|
| Please add the following cost to our original contract: |
| **Labor:** Three carpenters working 40 hours a piece at the scale wage of $37.64=    $4,516.80 |
| **Material:** $3,893.76 |
| **Social Security:** $345.54 |
| **Workers Compensation:** $451.68 |
| **10% Profit:** $920.78 |
| **5% Overhead:** $460.40 |
| |
| |
| |
| |
| |
| |
| |
| |

**Change the original contract amount by:**     $ 10,588.96

**Payment to be made as follows:**     Monthly Billing (June)

| We agree to furnish labor & materials complete in accordance with the above specifications at the price stated above. | Above additional work to be performed under the same conditions as specified in the original contract unless otherwise stipulated. |
|---|---|
| *Mark Miller* 6-22-07 | |
| LGS GROUP LLC,                         Date | General  Contractor                    Date |

**Note:** This change order becomes part of the original contract.



**MARJAM SUPPLY COMPANY**

www.marjam.com

*Building Materials: Drywall • Acoustics • Lumber • Tools • Flooring*
*Adhesives • Doors • Windows • Insulation • Siding • Roofing*

CUST #: **1034196**

**INVOICE**

| UPC V | INVOICE DATE | ORDER NO. |
|---|---|---|
| 000000 | 05/21/07 | 9536023-00 |
| SALESMAN | P.O. NO. | PAGE # |
| SMC | 2007-196 | 1 |
| | DATE AND TIME PRINTED | |
| | 05/21/07    17:26 | |

SHIP TO:

C17- FLIGHT SIMULATOR /
DOVER AIR FORCE BASE
ONRT1-COMMERCIAL GATE
DOVER, DE 19713

BILL TO:

LGS GROUP LLC
9309 BELAIR ROAD,SUITE B

PERRYHALL, MD 21236

CALL US FOR ALL YOUR MASONRY NEEDS

CORRESPONDENCE TO:

MARJAM - LONG ISLAND
885 CONKLIN ST.
(631) 249-4900
FARMINGDALE, NY 11735

(631)249-4900
BRIDGET

| INSTRUCTIONS |
|---|
| BOOM MEET DO 7-8AM |

| SHIP POINT | SHIP VIA | SHIPPED | TERMS |
|---|---|---|---|
| ** Drop Ship ** | DELIVERY | 05/21/07 | NET 30 |

| LINE NO. | PRODUCT AND DESCRIPTION | QUANTITY ORDERED | QUANTITY B.O. | QTY. SHIPPED | QTY. UM | UNIT PRICE | PRICING UM | AMOUNT (NET) |
|---|---|---|---|---|---|---|---|---|
| 1 | 6S1014<br>6" x 10' STUD 14GA SW | 42 | 0 | 42 | PCE | 1.8600 | 1ft | 781.20 |
| 2 | 6S1214<br>6" x 12' STUD 14GA SW | 70 | 0 | 70 | PCE | 1.8600 | 1ft | 1562.40 |
| 3 | 6S2420<br>6" x 24' STUD 20GA 10 PCE BDL 1-1/4" FLANGE | 45 | 0 | 45 | BDL | 0.6260 | LFT | 6760.80 |
| 4 | 6SW14<br>6" SW STUD 14GA 1-5/8 FLANGE<br>10-PCS // 16' LONG | 160 | 0 | 160 | LFT | 1.8630 | LFT | 298.08 |
| 5 | 6T1214<br>6" x 12' TRACK 14GA SPECIAL<br>60-PCS 12'-LONG | 720 | 0 | 720 | LFT | 1.7390 | LFT | 1252.08 |
| 6 | BOOM<br>BOOM SERVICE | 1 | 0 | 1 | HRS | 0.0000 | HRS | 0.00 |

```
*************************************************
*                                               *
*    SHIPPING-- PLEASE FILL IN TOTAL BOOM HOURS  *
*       ** PORT TO PORT **                       *
*       BILLABLE BOOM HOURS - _____        *
*                                               *
*                                               *
*************************************************
```

*Not Part of C/O #1*

THE CUSTOMER IS ADVISED THAT ALL PERMITS,FINES
PENALTIES ARE THE RESPONSIBILITY OF THE CUSTOMER
IF ANY OF THE ABOVE ARE INCURRED BY MARJAM.
THE CUSTOMER WILL BE BILLED AND HELD RESPONSIBLE.

CUSTOMER SIGNATURE

| 6 | Lines Total | Qty Shipped Total | 1038 | | |
|---|---|---|---|---|---|
| | | | | Total | 10654.56 |
| | | | | FUEL SURCHRG | 10.00 |
| | | | | Invoice Total | 10664.56 |

Last Page

NOTE: This Order is expressly subject to and conditioned upon Customer's acceptance of Seller's terms and conditions of sale, including that SELLER'S WARRANTIES ARE LIMITED TO THOSE OFFERED BY MANUFACTURERS ONLY, WHICH WARRANTIES ARE PASSED TO THE CUSTOMER UPON SALE. copy of the seller's terms and conditions of sale, as well as any manufacturer's warranties, will be provided upon request.

*Sent To Brad As Back up FOR C/O #1  6-14-07*

**Mark Miller**

| | |
|---|---|
| **From:** | Steve Young [SteveY@odyint.com] |
| **Sent:** | Thursday, May 24, 2007 4:14 PM |
| **To:** | Mike Austin; mark@lgsgroupllc.com |
| **Subject:** | RE: CHANGE ORDER |

Yes, you may include your change order #1 on your May pay request.

Steve Young
Odyssey International
22 E. Union St., Suite 310
Wilkes Barre, PA 18701
Tel: (570) 829-3745
Fax: (570) 829-3765
Cell: (801) 809-1418

---

**From:** Mike Austin
**Sent:** Thu 5/24/2007 3:32 PM
**To:** Steve Young
**Subject:** FW: CHANGE ORDER

Steve

Would you answer this for me??????

Thanks
Mike

---

**From:** mark@lgsgroupllc.com [mailto:mark@lgsgroupllc.com]
**Sent:** Thu 5/24/2007 11:58 AM
**To:** Mike Austin
**Subject:** CHANGE ORDER

Mike , Can I include change order #001 on my May req.

*Mark Miller*
*LGS Group LLC,*
*9309 Belair RD. Suite B*
*Perryhall MD. 21236*
*O-410 256-8687*
*F-410 248-0813*
*C-410 977-8834*
*mark@lgsgroupllc.com*

1



Office to Office Memo                                    15 May 2007

LGS Group, LLC
9309 Belair Road
2nd Floor, Suite B
Baltimore

Subject:  Letter to Proceed

Mark Miller

My purpose in writing is to notify you that Odyssey International gives you the okay to
proceed in ordering the 14 gage metal materials to complete the change order for the
fixes at the windows and doors. If you have any comments are questions please feel free
to call me at 302-674-0614 or 801-694-2169.


                                          Michael Austin
                                          Quality Control
                                          Odyssey International

C.F.
Steve Young
Brad

**Mark Miller**

| | |
|---|---|
| From: | Steve Young [SteveY@odyint.com] |
| Sent: | Friday, June 15, 2007 1:19 PM |
| To: | mark@lgsgroupllc.com |
| Subject: | Change order 001 |

Mark,

I received your invoices for your change order 001 from Brad yesterday. I still need some additional information before I can present it to the Corps of Engineers. In order to get a change order from them, backup must be provided to justify the costs. You gave me material receipts and some invoices from your welder.
On your original change order request, you gave me lump sum figures for material costs, unused material costs, and labor.
What the Corps requires is:
Breakdown of material costs (The invoice provided is sufficient)
Breakdown of labor costs (I have nothing but a lump sum)
Markups (I have nothing)
As for the unused material, they will not pay for the material (and allow you to keep it and use it on another job), but they will pay restocking fees. So I cannot reimburse you for the total material cost.

I told you it was OK to add this change order to your May pay request, but until I can submit a realistic cost (with backup) to the Corps of Engineers, so we can process our change order with them, I can't pay it, so please get this information to me as soon as you can.
Please call me with any questions.

Thanks,


Steve Young
Odyssey International
22 E. Union St., Suite 310
Wilkes Barre, PA 18701
Tel: (570) 829-3745
Fax: (570) 829-3765
Cell: (801) 809-1418

1

**Mark Miller**

| From: | Steve Young [SteveY@odyint.com] |
|---|---|
| Sent: | Monday, June 18, 2007 10:29 AM |
| To: | mark@lgsgroupllc.com |
| Subject: | RE: Change order 001 |

Hi Mark,

Usually what the Corps likes to see is just the man hours broken up into the applicable rates, whether they be carpenters, laborers, etc. with the wages paid, including your carry (workers comp insurance, withholding taxes, etc.) Add to that the cost for materials, rental equipment, etc. and then put your markup on it. They want sufficient detail to determine whether the costs are appropriate, and in line with what they should be. They require this information, so they have some way to monitor the costs, and make sure they are not paying too much or too little for the work being performed. Let me know if you have any further questions.

Thanks,

Steve Young
Odyssey International
22 E. Union St., Suite 310
Wilkes Barre, PA 18701
Tel:  (570) 829-3745
Fax:  (570) 829-3765
Cell:  (801) 809-1418

---

**From:** mark@lgsgroupllc.com [mailto:mark@lgsgroupllc.com]
**Sent:** Fri 6/15/2007 2:58 PM
**To:** Steve Young
**Subject:** Re: Change order 001

Steve, I am prepared to provide any information needed. In order to avoid going back and forth multiple times, how would you like me to break down the labor (i.e. lump sum, daily, per man, etc.) ?

*Mark Miller*
*LGS Group LLC,*
*9309 Belair RD. Suite B*
*Perryhall MD. 21236*
*O-410 256-8687*
*F-410 248-0813*
*C-410 977-8834*
mark@lgsgroupllc.com

1

-----Original Message-----
**From:** Steve Young [mailto:SteveY@odyint.com]
**Sent:** Friday, June 15, 2007 01:18 PM
**To:** mark@lgsgroupllc.com
**Subject:** Change order 001

Mark,

I received your invoices for your change order 001 from Brad yesterday. I still need some additional information before I can present it to the Corps of Engineers. In order to get a change order from them, backup must be provided to justify the costs. You gave me material receipts and some invoices from your welder.
On your original change order request, you gave me lump sum figures for material costs, unused material costs, and labor.
What the Corps requires is:
Breakdown of material costs (The invoice provided is sufficient)
Breakdown of labor costs (I have nothing but a lump sum)
Markups (I have nothing)
As for the unused material, they will not pay for the material (and allow you to keep it and use it on another job), but they will pay restocking fees. So I cannot reimburse you for the total material cost.

I told you it was OK to add this change order to your May pay request, but until I can submit a realistic cost (with backup) to the Corps of Engineers, so we can process our change order with them, I can't pay it, so please get this information to me as soon as you can.
Please call me with any questions.

Thanks,


Steve Young
Odyssey International
22 E. Union St., Suite 310
Wilkes Barre, PA 18701
Tel: (570) 829-3745
Fax: (570) 829-3765

2

# LGS Group, LLC

**9309 Belair Road Perry Hall, Md. 21236**
**Phone- (410-256-8687)**

# CHANGE ORDER # <u>003</u>

TO:

**ODDOSEY INTERNATIONAL**
**U.S. ARMY CORPS OF ENGRS.**
**C-17 Flight Simulator**
**Dover, Delaware**

| | |
|---|---|
| Date:    August 27, 2007 | |
| Job Name/ Location : | |
| Job Number:  C-17 | Job Phone |
| Existing Contract No. | Date of Existing Contract: |

We hereby agree to make the change(s) specified below:

| | |
|---|---|
| Overtime Pay week of 8/13/07 to 8/18/07 Week 19 | |
| 108 hours x 41.05 = | $4,433.40 |
| 15% Overhead & profit | $665.01 |
| **Total** | **$5,098.41** |

The above changes will extend the scheduled
completion date by 2 days.

**Note:** This Change Order becomes part of and is incorporated in the existing contract.

WE AGREE hereby to make the change(s) specified above at this price.                     **$5,098.41**

**Date:**                                              27-Aug-07

Signature

**ACCEPTED-** The above prices and specifications of this Change Order are satisfactory and are
hereby accepted. All work to be performed under the same terms and conditins as specified in the original
contract unless otherwise specified.          Date of Acceptance:_____

Signature: _____



# CHANGE ORDER INFORMATION
## FOR C17

| Name | 8/13 | 8/14 | 8/15 | 8/16 | 8/17 | 8/18 | COP | PAOTH | Total Hours | half tm | dollars | Base Wage |
|------|------|------|------|------|------|------|-----|-------|-------------|---------|---------|-----------|
| Jose Robles | 10 | 10 | 10 | 10 | 10 | 8 | $738.90 | 18 | 58 | $13.68 | $41.05 | $27.37 |
| Luis Robles | 10 | 10 | 10 | 10 | 0 | 0 | $0.00 | 0 | 40 | $13.68 | $41.05 | $27.37 |
| Ignarro Juarez | 10 | 10 | 10 | 10 | 10 | 8 | $738.90 | 18 | 58 | $13.68 | $41.05 | $27.37 |
| Mauricio Garcia | 10 | 10 | 10 | 10 | 10 | 8 | $738.90 | 18 | 58 | $13.68 | $41.05 | $27.37 |
| Onafre Castillo | 10 | 10 | 10 | 10 | 10 | 8 | $738.90 | 18 | 58 | $13.68 | $41.05 | $27.37 |
| Raul Garcia | 10 | 10 | 10 | 10 | 10 | 8 | $738.90 | 18 | 58 | $13.68 | $41.05 | $27.37 |
| Gruz Blanco | 10 | 10 | 10 | 10 | 10 | 8 | $738.90 | 18 | 58 | $13.68 | $41.05 | $27.37 |
| Geranoto Garica | 10 | 10 | 10 | 10 | 0 | 0 | $0.00 | 0 | 40 | $13.68 | $41.05 | $27.37 |
| Armando Garcia | 10 | 10 | 10 | 10 | 0 | 0 | $0.00 | 0 | 40 | $13.68 | $41.05 | $27.37 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

|  | PAOTH | | | | | | | | | | | |
| Total Hours | COP | | | | | | $4,433.40 | | 468 | | | |
| PAY AT OT HRS | | | | | | | | | | | | |
| CHANGE ORD PAY | | | | | | | | | | | | |



#19

## CONTROL HOURS REPORT

**Subcontractor's name** _JRC_
**Project's name** _C-17_
**Floor's #**
**Section's name**
**Week ending** _08-13 TO 08-18_

| Employee's name | Date/hrs 08/13 | Date/hrs 08/14 | Date/hrs 08/15 | Date/hrs 08/16 | Date/hrs 08/17 | Date/hrs 08/18 | Date/hrs | Total | |
|---|---|---|---|---|---|---|---|---|---|
| Jose Robles | 10hrs | 10 hrs | 10hrs | 10hrs | 10hrs | 8hrs | | 58hrs | 18 |
| Luis Robles | 10hrs | 10hrs | 10 hrs | 10hrs | | | | 40hrs | 0 |
| Ignacio Juarez | 10hrs | 10 hrs | 10 hrs | 10 hrs | 10hrs | 8hrs | | 58hrs | 18 |
| Mauricio Garcia | 10hrs | 10hrs | 10 hrs | 10 hrs | 10 hrs | 8hrs | | 58 hrs | 18 |
| Onofre Castillo | 10hrs | 10hrs | 10 hrs | 10 hrs | 10hrs | 8 hrs | | 58 hrs | 18 |
| Raul Garcia | 10hrs | 10hrs | 10hrs | 10 hrs | 10hrs | 8 hrs | | 58 hrs | 18 |
| Cruz Blanco | 10 hrs | 10hrs | 10hrs | 10 hrs | 10hrs | 8 hrs | | 58 hrs | 18 |
| Gerardo Garcia | 10hrs | 10 hrs | 10hrs | 10 hrs | | | | 40hrs | 0 |
| Armando Garcia | 10hrs | 10 hrs | 10hrs | 10 hrs | | | | 40hrs | 0 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**Description of activities**

Approved by _____     Approved by _____ **Foreman**

# LGS Group, LLC

**CHANGE ORDER # <u>004</u>**

**9309 Belair Road Perry Hall, Md. 21236**
**Phone- (410-256-8687)**

|  | Date: | August 27, 2007 |
|---|---|---|
| Job Name/ Location : | | |
| Job Number: | Job Phone | |
| Existing Contract No. | Date of Existing Contract: | |

TO:  **ODYSSEY INTERNATIONAL**
**U.S. ARMY CORPS OF ENGRS.**
**C-17 Flight Simulator**
**Dover, Delaware**

We hereby agree to make the change(s) specified below:

| Description | $ | Amount |
|---|---|---|
| Patch work room 110, One above the door 2'x1'&2'x4' | $ | 112.92 |
| (Electrician)        15% overhead & profit | $ | 429.10 |
| Patch work room 109 1'x4' & 8"x12" Electrical | $ | 112.92 |
| Two Patch work on corridor wall 135 2'x2' & 1'x2' Elect | $ | 112.92 |
| Two Patch work in wall109 & 107 2'x3' & 1'x | $ | 150.56 |
| One Patch work in room 111 1'x1' Electrical | $ | 75.28 |
| Two Patch work in room 112 18"x4' & 1'x2' Elect. | $ | 112.92 |
| Two Patch work in room 114 2'x3'  and 1'x1' Elect. | $ | 112.92 |
| One Patch work on room 102 3'x10' Elect. | $ | 150.56 |
| Two Patch work on corridor 134 1'x1'x & 1'x1' DuctComp | $ | 112.92 |
| One Patch work in room 130 1'x2' Insulation Company | $ | 75.28 |
| Two Patch work in room 115 1'x1' & 1'x1' Duct Comp Ele | $ | 112.92 |
| One Patch work in room 126 1'x8' Electrical | $ | 150.56 |
| Two Patch work in room 125 1'x1' & 1'x1' Electrical | $ | 112.92 |
| Two Patch work in room 117 and 120 1'x1' & 2'x4' Elect | $ | 150.56 |
| 7 Patches - work in room 127 Electrical | $ | 301.12 |
| Build a wall 12 lf outside the break room | $ | 903.36 |
| $37.64 |                    Total | $ | 3,289.74 |

**Note:** This Change Order becomes part of and is incorporated in the existing contract.

WE AGREE hereby to make the change(s) specified above at this price.

Date:
Signature

**ACCEPTED-** The above prices and specifications of this Change Order are satisfactory and are hereby accepted. All work to be performed under the same terms and conditins as specified in the original contract unless otherwise specified.        Date of Acceptance: _____

Signature: _____

Nov 21 07 12:30p                                                                p.1

C-17

**LGS Group, LLC**                              **CHANGE ORDER**
_____ Framing Division                       No.: _____
9521 A Horn Avenue Baltimore, MD 21236
Phone- (410) 256-8687

| Phone | Date |
|---|---|
| Job Name/Location | |
| | |
| Job Number | Job Phone |
| Existing Contract No. | Date of Existing Contract |

TO: _____
_____
_____
_____

We hereby agree to make the change(s) specified below:

Patch work room 110. One above the Door 2'x1' and 2x4 Electritia
Patch work room 109 1'x4' and 8"x12" Elect.
Two Patch work on Corridor wall 135 2x2 and 1'x2' Elect
Two Patch work in wall 109 and 107. 2'x3' and 1'x3' Elect
One Patch work in room 111 1'x1' Elect.
Two patch work in room 112 18"x 4' and 1'x8' Elect
Two Patch work in room 114 2x3 and 1'x1" Elect
One patch work on room 102 3'x10' Elect
Two Patch work on Corridor 134. 1'x1 and 1'x1' Duct Comp.
One patch work in room 130 1'x2' Insulation Company
Two patch work in room 115 - 1'x1' and 1'x1' Duct com. and Elect.
One patch work in room 126- 1'x 8' Elect.
Two patch work in room 125- 1'x 1 and 1'x1' Elect.
Two Patch work in room 117 and 120 - 1'x1' and 2'x4' elect
7 Patchs work in room 127   Elect
Build a wall 13 LF outside the Break Rm

Note: This Change Order becomes part of and is incorporated in the existing contract.

| WE AGREE hereby to make the change(s) specified above at this price | $ | |
|---|---|---|
| Date | PREVIOUS CONTRACT AMOUNT | $ | |
| Signature | REVISED CONTRACT TOTAL | $ | |

ACCEPTED- The above prices and specifications of this
Change Order are satisfactory and are hereby accepted.        Date of Acceptance: _____
all work to be performed under same terms and conditions
as specified in original contract unless otherwise specified.   Signature: _____



ent 617

**TAYLOR STEEL & IRON**
315 Bway Highway
ABING SUN, MD 21011
410-698-9308

| Customer's Order No. | | | | Date 6-5 20 07 | | |
|---|---|---|---|---|---|---|
| Name Odyssey (165 min Drywall) | | | | | | |
| Address C-M Flight Simulator | | | | | | |
| Dover, DE | | | Phone: | | | |

| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT. | MDSE. RETD. | PAID OUT |
|---|---|---|---|---|---|---|

| QUAN | DESCRIPTION | | PRICE | | AMOUNT | |
|---|---|---|---|---|---|---|
| 1 | Rodney Price | | 45 00 | | 45 | 00 |
| 1/2 | Travel | | 45 00 | | 67 | 50 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| 003998 | Received By | | TAX | | | |
|---|---|---|---|---|---|---|
| | | | TOTAL | 112 | 50 | |

GS0283
PRINTED IN U.S.A.

*Thank You*

**TAYLOR STEEL & IRON**

| Customer's Order No. | | | | Date | 6 - 6 | 20 07 |
|---|---|---|---|---|---|---|
| Name | Odessey (LC $45/Hr Drywall) | | | | | |
| Address | C-17 Flight Simulator | | | | | |
| Dover DE | | | | Phone: | | |

| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT | MDSE. RET'D | PAID OUT |
|---|---|---|---|---|---|---|
| | | | | | | |

| | DESCRIPTION | | PRICE | | AMOUNT | |
|---|---|---|---|---|---|---|
| 2½ | Roofing Price | | 45 00 | 112 | 50 | |
| 1½ | Travel | | 45 00 | 67 | 50 | |

| | | | TAX | | |
|---|---|---|---|---|---|
| 003999 | Received By | | TOTAL | 180 | 00 |

Thank You

# EXHIBIT E

# MILES & STOCKBRIDGE P.C.

November 1, 2007

**VIA CERTIFIED MAIL, FIRST CLASS U.S MAIL**
**AND VIA FACSIMILE 800-958-8284**
Mr. Whitney McBride
Odyssey International
560 West 1700 South
Clearfield, Utah 84015

RE:    Notice of Intent to File a Bond Claim on Contract # W912BU-06-C-0008 (C-17
        Flight Simulator, Dover Air Force Base, Delaware)

Dear Mr. McBride:

You are hereby notified that LGS Group – S. Charlotte Framing, LLC has furnished labor and materials to the project known as C-17 Flight Simulator, Dover Air Force Base, Delaware (the "Project"). LGS Group – S. Charlotte Framing, LLC provided light gauge framing and drywall services and related supplies and materials to the Project. The light gauge framing and drywall services and related supplies and materials are more specifically described in invoices, which are available upon request. After deducting all just offsets and credits to date, LGS Group – S. Charlotte Framing, LLC is owed Fifty Nine Thousand Four Hundred Nineteen Dollars and Ninety Nine Cents ($59,419.99), in addition to any amounts recoverable under law for interest and attorneys' fees. To date, LGS Group – S. Charlotte Framing, LLC has been paid Two Hundred Sixty Three Thousand Fifty Four Dollars and Forty Eight Cents ($263,054.48) on a previous application for payment.

LGS Group – S. Charlotte Framing, LLC had a direct contract with the Subcontractor, LGS Group, LLC, located at 80 Fisher Road, Unit 49, Cumberland, RI 02864. LGS Group – S. Charlotte Framing, LLC is hereby making a claim against the bond, and hereby demands payment forthwith. Pursuant to the Miller Act, we are hereby requiring all copies of labor and materialmens bonds on the Project. We will reimburse you for any reasonable copying costs.

If LGS Group – S. Charlotte Framing, LLC is not paid within 15 days of the date of this demand, it intends to file a claim on the above referenced bond(s).

I look forward to hearing from you.

Very truly yours,

Douglas S. Walker
Attorney for LGS Group – S. Charlotte Framing, LLC

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

LGS GROUP, LLC t/a LGS GROUP – BALTIMORE FRAMING and LGS GROUP – S. CHARLOTTE FRAMING

**DEFENDANT**

SAFECO INSURANCE COMPANY and ODYSSEY INTERNATIONAL INC.

(b) County Of Residence of First Listed Plaintiff:  Baltimore
(Except In U.S. Plaintiff Cases)

County Of Residence of First Listed Defendant:
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) Attorneys (Firm Name, Address, And Telephone Number)
Michael W. McDermott (No. 4434)
Michele Sherretta Budicak  (No. 4651)
Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801
302-571-6600

Attorneys (If Known)

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place An X In One Box For Plaintiff And One Box For Defendant)
(For Diversity Cases Only)

| | PTF DEF | | PTF DEF |
|---|---|---|---|
| Citizen of This State | ☐ 1 ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 ☐ 4 |
| Citizen of Another State | ☐ 2 ☐ 2 | Incorporated and Principal Place of Business in This State | ☐ 5 ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

## V. NATURE OF SUIT (Place An X In One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 U.S.C. 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 U.S.C. 157 | ☐ 410 Antitrust |
| ☒ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 U.S.C. 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates, etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 U.S.C. 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl Ret Inc Security Act | ☐ 871 IRS - Third Party 26 U.S.C. 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.):
40 U.S.C. § 3133

Brief description of cause:
Failure to pay for labor and material provided on a public project

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

CLASS ACTION YES  NO

DEMAND $85,559.28+

Check YES only if demanded in complaint
JURY DEMAND: YES  ☒NO

## VIII. RELATED CASE(S) IF ANY (See instructions)

JUDGE: Sue L. Robinson
(referred to Magistrate Judge Leonard P. Stark)

DOCKET NUMBER: 1:08-cv-00017

DATE  3-24-08

SIGNATURE OF ATTORNEY OF RECORD  *Michele J. Budicak (#4651)*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____